Tomás Pérez Sales, Petitioner, v. District Court of Mayagüez, Respondent.

No. 1081.    Argued July 13, 1936.—Decided July 31, 1936.

*José Sabater* for petitioner. *Bolívar Pagán* for defendant in the court below.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

Tomás Pérez Sales has filed a petition for a writ of certiorari in this court, alleging briefly that in a civil proceeding in the District Court of Mayagüez brought by Enrique Olivencia against the petitioner for filiation, that court entered judgment on June 25, 1934, dismissing the complaint, which judgment was reversed on appeal by this court on May 20, 1936, which in turn entered a judgment holding that the plaintiff was the natural recognized son of Pedro Pérez Sales, brother of the petitioner; that the petitioner applied for and obtained from this court leave to file, and did file, a motion for reconsideration of the judgment of May 20, 1936; that notwithstanding the fact that the mandate was withheld on account of such motion, Enrique Olivencia filed a suit in the District Court of Mayagüez against the People of Puerto Rico for revendication of properties of the estate of Pedro Pérez Sales, and assuming that the

judgment declaring Enrique Olivencia a natural recognized son—the judgment of this Supreme Court of May 20, 1936 —was final, the parties made a stipulation by which the People of Puerto Rico admitted the allegations of the complaint and consented to the entry of judgment against it, which judgment was in fact entered on June 29, 1936, a writ of ejectment being forthwith issued against the petitioner and his wife, who were arrested, and while they were under arrest, the marshal of the District Court went to the Mérida property and took possession of the keys of the house in which the petitioner was living, searching the same and depriving the petitioner of his property, "which continues to belong to him during such time as this Supreme Court holds the motion for reconsideration of judgment *sub curia* and until it sends the mandate to the court below."

The petitioner further alleges that on account of the violence with which these proceedings were carried out, the petitioner filed a complaint in the District Court of Mayagüez against Enrique Olivencia and the People of Puerto Rico to declare void their actions, to determine the ownership of the property and the right to possession and for an injunction, alleging substantially therein that the petitioner had been declared to be the sole and universal heir of Pedro Pérez Sales, his brother; that by virtue of a settlement with the People of Puerto Rico he had been in possession as owner since March 4, 1933, of the Mérida property, one of the properties left by his brother, the other two properties having been awarded to the People; and that Olivencia prematurely and before the issuance of the mandate in the filiation suit filed the revendication suit in which judgment was entered by stipulation, without jurisdiction, which judgment was immediately executed, as a result of which petitioner was ejected from his property. In conclusion he prays that a preliminary injunction be issued directing that the petitioner's possession of the property in question be respected.

520

He further alleges in his petition that ancillary to his nullity suit he filed a petition for preliminary injunction to prevent Olivencia from interfering with petitioner's possession of the property, praying that the "preliminary injunction be kept in force until the motion for reconsideration presented by this petitioner to this Honorable Supreme Court be decided and the mandate sent to the court below, offering to furnish a bond for the damages which might be caused to the defendant Enrique Olivencia by reason of such preliminary injunction; that the court below through its Judge, the Hon. Francisco Navarro Ortiz, refused to issue the preliminary injunction, entering thereon the following order: 'This court has considered and studied the petition for preliminary injunction filed in the instant case. A preliminary injunction is prayed for to suspend the execution of judgment in case no. 18,837 of *Enrique Olivencia* v. *The People of Puerto Rico* before this district court, and it appears from the record that the judgment therein is final, definite and executory, and it likewise appears from admissions and statements of the plaintiff himself in the present suit that such judgment has already been duly executed by the marshal under the order of this court of June 29, 1936, insofar as it refers to the properties which the plaintiff contends belong to him. Insofar as it refers to the other suit mentioned in the petition, civil no. 15,838 for filiation, in addition to the fact that such suit is a proceeding separate and distinct from the present case, the judgment of the Supreme Court is in favor of Enrique Olivencia, and that judgment of the Supreme Court creates rights which subsist until the same be reversed.' "

The petition concludes with an allegation that the district judge committed an error of procedure in denying the preliminary injunction:

"(a) Because the fact that the judgment entered in case No. 18,837 brought by Enrique Pérez Olivencia is final and executory, is no obstacle to the issuance by the court of the preliminary in-

junction, since such judgment was entered by stipulation of the parties in such suit, in which this petitioner was not a party nor was made a party, and such stipulation on account of a grave judicial error, has caused irreparable damage to the petitioner, depriving him of his property;

"(b) Because although The People of Puerto Rico could by stipulation consent to judgment in the suit brought by Enrique Pérez Olivencia and consent to give possession of the properties of the estate of Pedro Pérez Sales, it could only consent to give the posession of the properties held by the People of Puerto Rico, but not of the properties which are possessed by a third person, who has not been made a party to the suit; and if such procedure be permitted, the combination of litigants between themselves would be a means to deprive a third person, without due process of law, of the posession of real properties, which is what has happened in this case;

"(c) Because no legal or equitable ground whatever to deny the extraordinary remedy of injunction to repair a grave injury is afforded by the fact that the marshal might have executed a judgment entered yesterday and executed a few hours after entry when the judgment was as a matter of fact executed on properties in petitioner's possession and not upon properties in the possession of the People of Puerto Rico, defendant in such suit, particularly when the petitioner was not a party to such suit, and was intentionally not made a party, precisely for the purpose of surprising him and depriving him of his possessory rights, since the petitioner could not have prevented Enrique Olivencia and the People of Puerto Rico from agreeing in such suit, to prejudice him, and since it is not permissible either at law or in equity for the petitioner to be prejudiced by the result of a suit between such litigants and to be deprived of his properties, without being a defendant, without being given notice, warning or any notification whatever and without due process of law and without being given his day in court, his constitutional right to be respected in his property and in his peaceful possession thereof being thus violently infringed;

"(d) Because the ground for the decision of the court below, that civil suit no. 15,838 for filiation is a different suit, is fundamentally erroneous, since as is alleged in the principal suit in which the petition for injunction was filed, Enrique Olivencia does not have the status or capacity to file a suit for revendication of the properties of the estate of Pedro Pérez Sales, because such filiation proceeding is not terminated, because the mandate in such proceed-

ing has not been issued to the court below, and the court below has no jurisdiction to permit Enrique Olivencia to exercise hereditary rights not yet finally determined; that advantage was taken of the People of Puerto Rico, through its representatives, by causing them to believe that the judgment of reversal of this Supreme Court in such filiation suit was final and executory, when it is not, and when such judgment had not been officially notified to the court below;

(e) Because this petitioner alleged in his complaint that the action brought by Enrique Olivencia against the People of Puerto Rico, purporting to revendicate the properties of the estate of Pedro Pérez Sales is premature, for the reason that the plaintiff in such proceeding, Enrique Olivencia, has no sufficient status to set up rights as an heir because the filiation proceeding is still pending before this Supreme Court (*Iturrino* v. *Iturrino,* 24 P.R.R. 71, *Rivera* v. *Cámara,* 17 P.R.R. 503, *Puente* v. *Puente,* 16 P.R.R. 556) and if Enrique Olivencia, according to the authorities just cited, could not have asked for judicial administration of the properties of the estate because lacking the necessary status, much less could he sue the People of Puerto Rico indirectly to deprive the petitioner thereby of part of the properties of the estate, without a final judgment having been rendered in the filiation proceeding and without a declaration of heirship having been made by a competent court finally declaring that the aforesaid Enrique Olivencia was the sole and universal heir of Pedro Pérez Sales and with such declaration, which is what creates the rights, revendicate the inheritance from any person who might be in possession thereof through proper legal proceedings;

"(f) Because until such time as the filiation proceeding is finally decided by this Supreme Court, and the mandate is sent to the court below, Enrique Olivencia has no rights and it is a dangerous assumption upon the part of the court below to grant such rights, not yet determined, and thus to put him in possession of the inheritance, because if this Supreme Court did decide to reconsider its judgment, the damages would be irreparable as the petitioner has alleged, and could never be adequately compensated, because as alleged in the principal complaint and in the petition for a preliminary injunction, Enrique Olivencia is insolvent and has no known property to respond for such damages, and is thus taking possession of the inheritance without any guarantee and without legal or equitable right.

"SIXTH: The petitioner alleges that by the denial by the court below of the petition for a preliminary injunction upon bond, and by permitting the petitioner, through such denial, to be ejected from

the properties of which he was in possession, all petitioner's constitutional rights to have his possession respected have been violated, he has not been granted due process of law, he has been denied his day in court, and he has been condemned without being heard and without being afforded a means of defense, and through such violent procedure, the petitioner has had to file an action for nullity, declaration of ownership, and possession, and has asked for the only rapid remedy available for the reparation of the damage caused, and finding himself defenseless, has been forced to bring this certiorari proceeding, on account of the urgent need for justice and equity in the case, it being too late and highly prejudicial to await the lengthy process of appeal from the denial of the petition for a preliminary injunction.''

This court ordered the writ to be issued and set July 13 for hearing. Olivencia intervened. He avers that on July 13, 1936, he first found out that a motion for reconsideration had been filed in the filiation proceeding. He contends that notwithstanding the motion, the judgment entered by this court in the proceeding was and is final and executory; that he did not make the petitioner a party in the revendication suit for the reason that he was not a party, since the suit was based upon the fact that the properties were and are recorded in the registry of property in favor of The People of Puerto Rico, such properties being likewise owned by and in possession of The People; that it is true that judgment was entered in such proceeding by stipulation and that since such judgment was final and executory, the corresponding writ of execution was issued against the properties mentioned in the complaint; that it is true that the petitioner and his wife were arrested on the day that the judgment was executed, ''but this arrest was on account of a criminal complaint in a separate action brought by the Marshal of the District Court of Mayagüez against Tomás Pérez Sales and his wife for the reason that they, who were only mere possessors, illegally in possession of and usurping the properties involved in the revendication proceeding no. 18,837, offered serious resistance to the aforesaid mar-

shal and also to members of the Insular Police Corps, who went to assist the said marshal, doing the following acts: uttering vile and libelous insults in a loud voice against the justices of this Supreme Court, in words which out of respect to this honorable Supreme Court we do not here repeat, and against other citizens and high authorities, and also having struck on the face one of the Insular policemen assisting the marshal, and having aimed a loaded gun at the marshal and having incited the neighbors there gathered to resist the marshal, brandishing cudgels and firearms, with the result that at the moment of the execution of the judgment the Insular Police seized three rifles, with a great number of cartridges and bullets of sufficient caliber to kill human beings, an army bayonet, a sharp Spanish sword, a dagger and other weapons, which arms were seized by the Insular Police and taken to Police Headquarters in Mayagüez; . . .''

Olivencia further averred that it is untrue that any property of the petitioner had been searched or that any violence had been used against him. He maintains that the district judge did not commit the errors assigned to him by the petitioner and that the order was correct:

''(a) because the judgment in case no. 18,837, the execution of which was sought to be suspended, had already been completely executed since the day preceding the filing of the petition for injunction in suit no. 18,915; (b) because the execution in suit no. 18,837 for revendication brought by Enrique Pérez Olivencia against the People of Puerto Rico, is perfectly legal, for the reason that the judgment in such suit for revendication No. 18,837 at the moment in which execution was had, was perfectly final, firm and executory, and for the reason that the properties affected by such execution were owned by and in the possession of the People of Puerto Rico; (c) because the properties affected by the execution in the aforesaid revendication proceeding no. 18,837, at the moment of execution, were not owned by or in the rightful legal possession of a third person, but were owned by and in the possession of a defendant People of Puerto Rico, as appears from the record in such proceeding; (d) because if the mere illegal occupation or the fact that a third person is illegally in charge of or usurping a property, would require

that in the execution of a judgment proceedings be brought against such occupant or usurper, then it would be necessary in all revendication proceedings to bring a multiplicity of interminable suits, since a few hours before execution of such judgment any person might as mere usurper or occupant take possession of a property about to be executed upon, thus making it impossible to execute any judgment of unlawful detainer or any order of ejectment, all of which would result in a mockery and a denial of law and justice; (e) because in the petition for preliminary injunction in the aforesaid suit no. 18,915, the properties to be affected by such alleged injunction were not described or identified specifically or concretely; (f) because the alleged 'irreparable damage' is entirely imaginary, because the properties sought to be acquired or retained by such injunction is not money which can be spent, nor are they constructions which might be completed, nor are they fungible goods or anything like that, but rock and durable earth which could only disappear by the sinking of the island of Puerto Rico beneath the seas or by a cataclysm of the earth; (g) because in such proceeding no. 18,915, the defendant People of Puerto Rico was an indispensable party, according to the averments above made, and to file the complaint in suit no. 18,915 against the defendant People of Puerto Rico, neither the necessary legislative authorization nor the prior permission and bond required by law in suits against the People of Puerto Rico were obtained or posted; (h) because the execution in suit no. 18,837 was by virtue of a final firm and executory judgment, entirely independent of the aforesaid filiation proceeding; and (i) because the judgment of the Supreme Court of Puerto Rico in the afore-mentioned filiation proceeding creates in and of itself rights in favor of Enrique Pérez Olivencia as a natural recognized son of Pedro Pérez Sales, and there is no provision of law in force in Puerto Rico which provides that the mere filing of a motion for reconsideration has the immediate consequence of annulling or rendering void a judgment in a suit decided by the Supreme Court in an action from which no appeal can be taken.''

Olivencia further contended that the petitioner was negligent in not asking simultaneously with his motion for reconsideration for an order directing that proceedings be stayed which might affect the properties left by Pedro Sales; that the order of the District Court of Mayagüez refusing the injunction is appealable; that this proceeding is a collateral

attack on proceedings in the district court in other suits affecting Olivencia and that the latter has not in the orderly legal manner had an opportunity to defend himself therein, and that the petitioner has not asked for reconsideration in the district court itself, and that there is no public interest requiring direct intervention of the Supreme Court; that the properties are subject to the payment of past due taxes, and that trees and crops are being destroyed since this Supreme Court entered judgment in favor of Olivencia in the filiation proceeding, and finally, that the motion for reconsideration filed in such proceeding is frivolous and has been filed to delay and to prevent enjoyment of the inheritance left by Pedro Pérez Sales to his son Enrique Pérez Olivencia.

The petitioner has filed a reply refuting in writing the grounds of the answer filed by Olivencia which we have just summarized. He insists that the judgment of this Court in the filiation proceeding is not executory until sent to the district court; that the suit for revendication was commenced when the mandate had already been withheld and leave granted to file a motion for reconsideration and that it is a proved fact that the petitioner and not The People was in possession of the Mérida property, and that the district court had no jurisdiction to enter the judgment by stipulation prior to receiving the mandate.

He contends that it is untrue that he and his wife used insulting language, but that it is true that he got a lawyer to intervene in order to prevent the marshal from doing an unlawful act and laid the facts before the district judge, but that the attorney for Olivencia insisted that the marshal should act, and that such marshal drafted the complaints to secure material possession of the property while the petitioner and his wife were arrested.

He maintains that he is not guilty of negligence since on the day following his ejectment from the property he filed his nullity suit; that the revendication proceeding was decided in 29 days; that on the day on which the district

court denied the injunction, the court started its vacation and will be on vacation until September; that the circumstances require this Court to act; that if it does not act at once, he will lose the coffee crop and that if it should be finally decided that the motion for reconsideration in the filiation proceeding should be allowed, the petitioner could not be compensated for the reason that Olivencia is insolvent.

Such are the facts and pleadings which appear from the record, and which show things unwontedly contrary to the serenity which ought to permeate all the actions of courts of justice. Attention is arrested by the fact that the record in the revendication suit contains nothing with respect to the execution of the judgment entered in that suit.

■ In accordance with the practice of this Court, its judgments, unless the contrary is expressly stated, are not notified for execution to the district court from which the case comes until ten days after entry, a term which has been considered sufficient to enable the interested parties to take such steps in connection therewith as they may deem advisable.

If within such term or within such as may be granted for that purpose, a motion for reconsideration is filed, then the mandate is withheld until the motion is decided.

In the filiation proceeding here involved, this Court entered judgment on May 20, 1936. On May 23, 1936, that is within the term of ten days, the defendant—the petitioner Tomás Pérez Sales—asked that the mandate be withheld and that he be granted a period of thirty days to file a motion for reconsideration. The Court granted him until June 9, 1936, and the mandate was not sent. On June 8, 1936, the motion for reconsideration was in fact filed, and is now pending decision.

Section 306 of the Code of Civil Procedure, as effective since 1906, (ed. 1933, p. 145), provides:

"Section 306.—When the judgment, order or decree of the court below shall be reversed, the court shall proceed to render such judg-

ment, order or decree as the court below should have rendered, except when it is necessary that some matters of fact be ascertained, or the damage to be assessed or the matter to be decreed is uncertain, in any of which cases the cause shall be remanded for a new trial in the court below.

"The judgments of the Supreme Court rendered on appeal, shall be certified to the court below for observance. When the appeal is from the final judgment, the secretary of the court below must attach the certificate to the judgment roll and enter a minute of the judgment of the Supreme Court on the docket against the original entry. When the appeal is from an order, the secretary must enter at length, on the records of the court, the certificate received, and enter against the entry of the order appealed from a reference to the certificate, with a brief statement that such order has been approved, reversed or modified by the Supreme Court on appeal."

■ This Supreme Court affirms, reverses or modifies the judgments of the district courts of the Island which are appealed before it, and in some cases renders the judgment which should have been rendered by the court below. Opportunely the mandate is sent to the corresponding district court, which is then required to execute its own judgment as affirmed or modified by the Supreme Court, or the judgment which the Supreme Court may have rendered in lieu thereof in deciding the case as, in its opinion it should have been decided under the facts and the law.

■■ When on June 15, 1936, the parties in the revendication proceeding signed a stipulation for the entry of judgment, and when on the 29th of that month the District Judge of Mayagüez rendered the judgment which the parties asked him to render, not only had not the judgment in the filiation proceeding been communicated to the district court, but the appellee had expressly been granted a period within which to file a motion for reconsideration, which carried with it the retention of the mandate.

Upon this state of facts, although the judgment of this Court deciding the filiation proceeding was, as it still is, in full force, execution thereon had been virtually stayed by

the fact that this Court had reassumed jurisdiction over the case in granting leave to file a motion for reconsideration.

■ This is evident and must have been known to the parties and to the District Judge of Mayagüez, to whose court the mandate should have been remitted for the purposes of execution of the judgment.

The district judge, knowing this, should have refused to enter judgment, since one of the fundamental grounds upon which such judgment rested—the executory nature of the judgment in the filiation proceedings—did not exist.

■ Consequently, when the petition for injunction was filed showing that the structure raised by the entry of judgment in the revendication suit must fall as groundless, the court, being as it was in control of its own judgment rendered on the day preceding, should have granted the preliminary injunction.

■ But there is more, even though a valid judgment had been involved, so unusual were the acts brought to the attention of the district judge as having been done by the marshal in executing the judgment rendered in the revendication suit, that he should not have refused to intervene. The district court had and has the power to control, in furtherance of justice, the conduct of its officers—Section 7, sub-division 5, Code of Civil Procedure, ed. 1933, p. 5—and it should not have permitted a situation such as that appearing from the record to continue.

This is a case of notorious injustice. A writ of certiorari lies. In certain aspects there is involved here a question of jurisdiction, and the procedure followed for the execution of the judgment is not in accordance with the law.

The order entered in the nullity proceeding on June 30, 1936, denying the petition for preliminary injunction, must be vacated, and the record in such proceeding remanded to the district court from which it came, with directions to order, upon the filing of bond by the petitioner deemed to

be sufficient, the restoration of the situation to the state in which it was prior to the issuance of the writ of execution, until further order of the court. Furthermore, since this is an urgent case, let the mandate be sent immediately to the district court.

Mr. Justice Córdova Dávila and Mr. Justice Travieso took no part in the decision of this case.